UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 15 CR 518 |
| v. | |
| DANTRELL WILLIAMS | Hon. Gary Feinerman |

### GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by and through its attorney, ZACHARY T. FARDON, United States Attorney for the Northern District of Illinois, hereby submits the following sentencing memorandum. The government agrees with the PSR that the correct advisory Sentencing Guidelines range in this case is 57 to 71 months' imprisonment. For the reasons discussed herein, the government recommends a sentence within the advisory Guidelines range, followed by a term of supervised release of three years.

### I. BACKGROUND[1]

Defendant, a 20-year-old convicted felon, was charged by indictment with possessing firearms on March 22, 2015 (Count Two) and January 31, 2015 (Count One). On April 20, 2016, defendant pled guilty to Count Two pursuant to a written plea agreement in which he also admitted as relevant conduct facts that formed the basis for the charge in Count One.

---

[1] The facts underlying this case and discussed herein are set forth in several sources, including the Presentence Investigation Report ("PSR"), the Government's Version of the Offense ("Govt's Version," attached to the PSR), the plea agreement between the parties ("Dkt. 50"), and the district court record ("Dkt.").

## II.    ARGUMENT

Before imposing a sentence of imprisonment or a term of supervised release, the Court must calculate the applicable advisory Guidelines range and consider the factors set forth in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 46 (2007). If a term of supervised release is imposed, the Court must consider defendant's offense conduct and the factors set forth in 18 U.S.C. §§ 3583(c) and 3553(a)(1), (a)(2)(C), and (a)(2)(D) in fashioning specific supervised release conditions. *See United States v. Thompson*, 777 F.3d 368, 377 (7th Cir. 2015); *United States v. Siegel*, 753 F.3d 705, 716-17 (7th Cir. 2014). In this case a sentence within the advisory Guidelines range is sufficient but not greater than necessary to satisfy the goals of Section 3553(a).

### A.    The Advisory Sentencing Guidelines Range

The advisory Guidelines calculations are based on the November 2015 version of the Sentencing Guidelines Manual. As discussed below, the parties and the PSR differ on the application of the Guidelines in this case.

### 1.    Offense Level Calculations

The parties[2] and the PSR are in agreement that the base offense level is 20, pursuant to Guideline § 2K1.1(4)(B)(i) because one of the firearms possessed by defendant – namely, the 7.62 millimeter rifle – was a semi-automatic firearm capable of accepting a large capacity magazine.

---

[2] The positions of the government and the defendant are set forth in paragraph 4 of the plea agreement (Dkt. 50).

The parties and the PSR are in agreement that, pursuant to Guideline § 2K2.1(b)(6)(B), the offense level is increased by four levels because defendant used or possessed the firearm in connection with another felony offense, namely, aggravated fleeing.

Under the plea agreement, the government took the position that pursuant to Guideline § 3C1.2, the offense level was increased by two levels because the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer; the defendant reserved the right to argue that this Guideline was inapplicable. The PSR takes the position that although the facts support application of this Guideline, Guideline § 3C1.2 nonetheless should not be applied because, per Application Note 1 to § 3C1.2, the enhancement is not applied where the offense Guideline resulted in a greater increase in offense level based solely on the same conduct. The government agrees that because the four-level enhancement under Guideline § 2K2.1(b)(6)(B) results in a greater increase in offense level based on the same conduct – namely, recklessly fleeing from a law enforcement officer – this Guideline should not be applied. Should this Court conclude that Guideline § 2K2.1(b)(6)(B) does not apply, it is the government's position that a two-level offense increase would apply under Guideline § 3C1.2.

The parties and the PSR agree that a two-level reduction under Guideline § 3E1.1(a) and a one-level reduction is appropriate under Guideline § 3E1.1(b) for acceptance of responsibility.

The government therefore agrees with the PSR that the total offense level is 21.

### 2.      Criminal History Category

Per the terms of the plea agreement, the parties agree that defendant receives one criminal history point for his adult conviction for possession of a controlled substance on January 11, 2013, for which he received a sentence of 18 months' probation. The parties further agreement that pursuant to Guideline § 4A1.1(d), defendant receives two additional criminal history points because he committed the instant offense and relevant conduct while on probation from this conviction.

The PSR cites multiple juvenile convictions of which the government was previously unaware. The government agrees that the PSR correctly applies the Guidelines to defendant's juvenile criminal convictions, resulting in the addition of five criminal history points.

The government agrees with the PSR that defendant has a criminal history score of 6, resulting a criminal history category of IV.

### 3.      Advisory Guidelines Range and Supervised Release Term

It is the government's current position that the defendant's total offense level is 21 and his criminal history category is IV, resulting in an advisory Guidelines range of 57 to 71 months. This position is consistent with the PSR. Under the plea agreement, the government previously took the position that the defendant's anticipated advisory Guidelines range was 51 to 63 months, based on an offense level of 23 and a criminal history category of II; the defendant took the position that

the defendant's anticipated advisory Guidelines range was 41 to 51 months' imprisonment based on an offense level of 21 and a criminal history category of II. As noted above, the plea agreement did not include defendant's juvenile convictions, which were unknown to the government at the time.

The government agrees with the PSR that a supervised release term of three years is appropriate given defendant's criminal history, which reflects a proclivity to violence and a tendency to recidivate. PSR ¶¶ 35-56. The government's recommendations as to specific conditions of supervised release are discussed below.

**B. A Guidelines Range Sentence Is Appropriate Under Section 3553(a)**

**1. The Nature and Circumstances of the Offense**

The offense conduct in this case is discussed at length in the PSR, the Government's Version of the Offense, and the plea agreement between the parties, and will not be recounted in its entirety here. Of particular note, however, is the violence surrounding each of the charged possessions. Both of the charged offenses took place on Chicago's West Side, an area of Chicago that has in recent years become synonymous with gun violence due in large part to individuals like the defendant, who both perpetrate and attract violence through organized gang activity. The January 31, 2015 possession involved a 9mm pistol that had been used to shoot a known member of the Four Corner Hustlers street gang on January 14, 2015. The car in which the defendant was riding at the time had been involved in another shooting on January 21, 2015, in which two innocent bystanders were injured. Defendant claimed the pistol as his own and told officers: "It's fucked up.

Everybody trying to kill me because I'm a Royal [i.e., a member of the Simon City Royals street gang]. I gotta protect myself." Defendant was charged in the Circuit Court of Cook County with unlawful use of a weapon and released on bond pending trial.

A mere two months later, defendant was arrested in possession of the second firearm charged in the indictment, an AK-47-style assault rifle loaded with an extended magazine containing 30 live rounds of ammunition. On the night of his arrest, the defendant was driving without a valid license when he almost collided with a police car after running a stop sign. Defendant switched off his headlights and led officers on a high-speed chase (in excess of 45 miles per hour) through alleys and side streets, at one point nearly striking an officer in his attempt to escape. Defendant was eventually apprehended and placed under arrest along with two other members of the Simon City Royals. Despite having been arrested in possession of an even more deadly weapon than his already pending charge, defendant was once again released on bond.

On August 13, 2015, defendant was the victim of an apparent gang-motivated shooting which left a bullet lodged in his forearm. Defendant has refused to cooperate with law enforcement in the investigation of this shooting.

### 2. Defendant's History and Characteristics

Defendant has been a member of at least two violent street gangs, sold heroin and other dangerous drugs on a daily basis, and found himself on both sides of violent confrontations involving firearms, all before the age of 20. Defendant has five prior criminal convictions and over a dozen arrests for offenses that include

selling narcotics and threatening individuals with firearms. In nearly all of his prior encounters with law enforcement, defendant has been hostile, deceptive, obstructionist and, in some cases, violent. Some of defendant's criminal and anti-social conduct can be attributed to an adolescence marked by economic instability and substance abuse. Of defendant's five prior convictions, four were committed while he was still a juvenile under the law, and his youth should be taken into account when considering how much weight to give these convictions. At the same time, defendant has had repeated opportunities to conquer his dependencies and get his life back on track, but has instead chosen again and again to ally himself with violent street gangs – first, the Traveling Vice Lords and, most recently, the Simon City Royals, led by Thaddeus Jimenez.[3] Defendant has graduated from being an impressionable teenager vulnerable to the allure of gang life to a mature perpetrator of its culture of violence. It is time for him to take responsibility for his actions while he is still young enough to have a future.

### 3. The Need To Provide Just Punishment, Afford Adequate Deterrence, Protect the Public, and Promote Respect for the Law

Defendant's crimes are part of a larger pattern of individual criminality that shorter prison terms and probationary sentences have failed to deter. But they are also emblematic of a larger social phenomenon involving young men across Chicago who settle disputes by resorting to violent vigilantism, with innocent bystanders

---

[3] On June 22, 2016, Jimenez pleaded guilty (along with his co-defendant Jose Roman, another member of the Simon City Royals) to illegally possessing a firearm that Jimenez used to shoot a former gang member in August 2015.

often caught in the quite literal crossfire. The illegal and reckless use of firearms by street gangs has helped make Chicago the latest poster child for gun violence in America. Last year alone, there were 468 murders and approximately 2,900 shootings, more than any other American city.[4] Since March 2015, five members of the Simon City Royals, including defendant, have been indicted and pleaded guilty to federal firearms charges. At least a half dozen more have been charged with state weapons offenses. This behavior is not simply criminal. It is a way of life that glorifies the rejection of law and order in favor of extra-legal, even feudal, means of self-governance. The result is an atmosphere of terror that devastates communities and leads only to increasingly lengthy prison terms, or death, for its participants. A Guidelines range sentence is appropriate and necessary to deter the defendant and others like him from perpetuating this destructive lifestyle and to promote respect for the law. Such a sentence is no less necessary to protect the public from individuals like defendant who illegally possess and indiscriminately use assault-grade weapons in residential communities.

## C.    Recommended Conditions of Supervised Release

Given the circumstances of the offense, defendant's criminal history and, in particular, his many prior probation and bond violations, the government, consistent with the PSR, recommends the maximum term of three years' supervised release. The applicable mandatory conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on page 23 of the PSR. The government has no objection to

---

[4] *See* "Chicago Shootings and Murders Surged in 2015," *Time* (Jan. 2, 2016). http://time.com/4165576/chicago-murders-shootings-rise-2015/.

the recommended discretionary and special conditions of Supervised Release set forth on pages 23 through28 the PSR, and concurs with the probation officer's rationale for these conditions. Specifically, the government agrees that discretionary conditions (1), (4), (6), (7), (8), (9) and special conditions (1), (2), (3) and (11) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting the public from further crimes by the defendant, and assisting the defendant in reintegrating into society upon his release. The government further agrees that discretionary conditions (14), (15), (16), (17), and (18) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed.

### D.     Restitution and Forfeiture

Restitution is not an issue in this case. The government has spoken with defense counsel, and defendant has agreed to abandon his rights in both the 9mm pistol and the 7.62mm semiautomatic firearm used in the offense charged in Count One of the indictment. The government will file an agreed motion for abandonment and submit a proposed preliminary order of abandonment prior to defendant's sentencing hearing on July 14.

**III.    CONCLUSION**

For the reasons stated above, this Court should sentence Dantrell Williams within the advisory Guidelines range of 57 to 71 months' imprisonment, followed by a term of three years of supervised release.

Respectfully submitted,

ZACHARY T. FARDON
United States Attorney

By:    /s/ *Kathryn E. Malizia*
KATHRYN E. MALIZIA
Assistant U.S. Attorney
219 South Dearborn Street, Room 500
Chicago, Illinois 60604

Dated: June 22, 2016